# CASES

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

**DURING THE YEAR 1910 and 1911.**

---

**William J. McDavid, Executor, Appellee, v. John Russell Miller, Appellee, and The Presbytery of Alton of The Presbyterian Church in the United States, Appellant.**

1. WILLS—*effect of codicil.* The publication of a codicil is the republication of the will in the form in which it was at the time of the execution of the codicil, and proof of the execution of the codicil establishes the will.

2. WILLS—*effect of codicil.* A clear gift cannot be cut down by any subsequent codicil unless it shows a clear intention so to do. Where a codicil is appended to a will and does not contain any clause of revocation, the provisions of the will are to be disturbed only so far as is absolutely necessary to give effect to the provisions of the codicil, and in other respects the will and codicil are to be construed together.

3. WILLS—*when second legacy cumulative.* When two legacies of quantity are given *simpliciter* to the same person by different testamentary documents, the presumption is that the second legacy is cumulative without regard to the matter of equality or inequality in amount. And an expressed intention to make the alteration in a will in one particular, negatives, by implication, an intention to alter it in any other respect.

4. WILLS—*when devises cumulative.* The will in question in this case is construed and the devises made by codicil held cumulative and additional rather than substitutes for and in lieu of a devise contained in the original will.

Bill to construe will. Appeal from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding. Heard in this

(1)

court at the March term, 1910. Affirmed. Opinion filed November 12, 1910.

**Statement by the Court.** This is an appeal from a decree of the Circuit Court construing the will and two codicils of John R. Newman, deceased. The will was made January 12, 1886; the first codicil, April 20, 1886; and the second codicil, March 27, 1895. All were duly probated, and the devisory clauses in the will that are specially material here are as follows:

"Third. After the death of my said wife, it is my will, and I order and direct that a trust fund of two thousand dollars shall be raised out of my estate and invested at interest, the income of which trust fund I give unto my adopted daughter, Carrie Miller, during her natural life. And at the decease of the said Carrie Miller, the interest or income of said trust fund shall be paid to her oldest son, John Russell Miller, until he, the said John Russell Miller, shall attain the age of twenty-one years, and then the principal sum or trust fund shall be paid to the said John Russell Miller. If, however, the said John Russell Miller shall have attained the age of twenty-one years at the time of the death of the said Carrie Miller, then the said principal or trust fund of two thousand dollars shall be paid to him at once, and in case the said John Russell Miller shall die without issue before he shall come into the possession of the said principal or trust fund, then said principal or trust fund to be given to the heirs of the body of the said Carrie Miller, share and share alike.

"Fourth. Whereas, I have made a bequest of five thousand dollars to the endowment fund of Lincoln University, of Lincoln, Illinois, payable two years after the death of myself and my wife or the survivor of either, it is my will, and I direct my executor to pay the said sum of five thousand dollars to the proper officers of the said Lincoln University, within two years after the death of the survivor of myself or my wife, which sum is to be used as a part of the endowment fund of said university.

"Seventh. All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and

bequeath unto Rev. William J. McDavid, of Irving, Montgomery County, Illinois, his heirs and assigns forever; but in trust, nevertheless, for the performance of this my will concerning the same. That is to say:

"1st.   To take care, management and control of all my said estate upon the death of my said wife if she shall survive me, but if I shall survive her then upon my death, and manage the same to the best advantage as he, the said William J. McDavid, may think best.

"2nd.   It is my wish that within five years after my said trustee shall take the care and control of my said estate, he shall convert the same into money, and if he shall make sales of any portion or all of my said estate before the expiration of the said five years, it is my will, and I so direct, that my said trustee shall loan the proceeds thereof at interest upon good securities, for a term not to exceed the period of five years from the time my said trustee shall come into the control and possession of my said estate.

"3rd.   After the expiration of the said five years I direct my said trustee to pay over to the Vandalia Presbytery of the Cumberland Presbyterian Church of Illinois all of the rest, residue and remainder of my said estate, to it and to its successors and assigns forever, the principal sum of which shall be held by the said Presbytery as a permanent fund and the same to be loaned at interest or invested in good interest-bearing securities, and the interest arising from said principal sum to be applied by the said Presbytery to the support of a missionary within the bounds of the said Vandalia Presbytery, said missionary to be under the control of the said Presbytery."

The first clause in the will provided for the payment of the deceased's debts, and by the second clause the deceased devised all of his property, real, personal and mixed to his wife, Elizabeth Newman, for life with power to manage the same and to use so much thereof as she deemed necessary for her support and comfort.   The fifth clause thereof made a specific devise of a lot of ground to the Liberty Prairie Church Society of the Cumberland Presbyterian Church, and

the sixth was a specific devise of one thousand dollars to Rev. William J. McDavid, the executor named, in lieu of all commissions allowed him by law. The devisory part of the first codicil contains two specific devises of scholarships in the Lincoln University, one each to the said William J. McDavid and Mrs. Fannie Starkey, daughter of Samuel Miller, Sr. The particularly material parts of the second codicil are in these words:

"Second. I give, devise and bequeath to Carrie Miller the interest on fifteen hundred dollars, and at her death said sum of fifteen hundred dollars shall go to her three children.

"Third. I give, devise and bequeath to John Russell Miller the sum of fifteen hundred dollars, to be paid to him within two years after the death of my wife.

"Tenth. Having heretofore, by the fourth clause of my will, devised the sum of five thousand dollars to the Lincoln University, of Lincoln, Illinois, to be used as part of the endowment fund of said university, I hereby give, devise and bequeath an additional sum of five thousand dollars to said Lincoln University, of Lincoln, Illinois, said bequest to be upon the terms and conditions as set forth in the said fourth clause of my will as aforesaid, making in all a bequest of the sum of ten thousand dollars to said university endowment fund.

"Twelfth. It is my will that after the foregoing bequests herein have been met and fulfilled as herein set forth, and the bequests, as set forth in my former codicil have also been fulfilled, then the seventh clause in my will shall take effect and the rest, residue and remainder of my estate, real, personal and mixed, shall go as set forth in the said seventh clause of my will aforesaid."

First, fourth, fifth and seventh clauses of the second codicil contained specific devises of $500 a piece to Fanny Starkey, Lizzie Lauterman and Ella Arbuthnot; the sixth, one of $600 to Belle Ellis; the eighth, one of $200 to Mollie Bratton; and by the ninth clause thereof he willed his watch to Edwin Ray Hunter.

The other facts were agreed on as follows: that the testator died March 31, 1895, leaving his said widow who took and enjoyed his property after his death until she died, November 22, 1907; that on her death the executor took charge of said property except the church lot and has in his possession the proceeds thereof, $20,688.85, enough to pay all specific legacies and leave a balance for the residuary legatee; that said John Russell Miller was named for the testator, John Russell Newman, and lived and made his home with said testator from the time he was four years old to the death of the testator and was schooled and clothed by the testator during that time and is now thirty-four years of age; that said Carrie Miller was living at date of the second codicil and was his adopted daughter and had then four living children including said John Russell Miller, and that she died May 25, 1904, leaving John Russell Miller and Margaret A. Miller as her only children and heirs; that the appellant is successor to Vandalia Presbytery of the Cumberland Presbyterian Church and entitled to all its predecessor's rights under said will; that said testator in his lifetime gave his note for $5,000 to Lincoln University payable two years after death of himself and wife which is still held by the payee and the same has never been filed as a claim against said estate.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant.

EARLY & WILLIAMSON, for appellees.

MR. JUSTICE DUNCAN delivered the opinion of the court.

The sole question for our decision is whether the second and third clauses of the second codicil were intended to be cumulative and additional devises, or substitutes for and in lieu of, the devise in the third clause of the original will. The lower court held that

they were cumulative and that John Russell Miller was entitled to $2,000 by the original will and $1,500 by the third clause of the second codicil. "The publication of the codicil was a republication of the will in the form it was at the time of the execution of the codicil, and proof of the execution of the codicil establishes the will." "A clear gift cannot be cut down by any subsequent words (or codicil) unless they show an equally clear intention. * * * Where a codicil is appended to a will and does not contain any clause of revocation, the provisions of the will are to be disturbed only as far as is absolutely necessary to give effect to the provisions of the codicil, and in other respects the will and codicil are to be construed together." Hubbard v. Hubbard, 198 Ill. 621; Vestal v. Garrett, 197 Ill. 398; Jenks v. Jackson, 127 Ill. 341; Phayer v. Kennedy, 169 Ill. 360; 30 Am. & Eng. Ency. 665.

When two legacies of quantity are given *simpliciter* to the same person by different testamentary instruments, the presumption is that the second legacy is cumulative without regard to the matter of equality or inequality in amount. And an expressed intention to make the alteration in a will in one particular, negatives, by implication, an intention to alter it in any other respect. 18 Am. & Eng. Ency. 729; 3 Am. & Eng. Ency. 296 (1st Ed.); Vestal v. Garrett, 197 Ill. 398.

Examining the will and codicils carefully and applying the well established principles of construction to them we think it clearly appears that the lower court gave the proper interpretation of said will. Great stress is laid by appellant on the twelfth clause of the second codicil as showing a clear intent in the testator to abrogate the third clause of the original will. We see no more reason why this clause should be thus abrogated from the will than any other clauses of the original will with the exception of the second and fourth. It is practically conceded by appellant that

the whole of the original will is in full force except
the third clause. It seems to us clear that what the
testator meant by the words in said twelfth clause
"after the foregoing bequests herein have been met
and fulfilled as herein set forth, and the bequests, as
set forth in my former codicil have also been fulfilled,
then the seventh clause of my will shall take effect,"
etc., is that the two codicils in his will are to take
effect and be complied with before the taking effect
of the residuary legacy spoken of in the third provision
of said seventh clause, and without any notion of
abrogating the other clauses in his original will. In
other words the testator simply meant that we were
to insert the first and second codicils in his original
will as part and parcels thereof and between the sixth
and seventh clauses thereof. He clearly did not intend
that the two codicils and the seventh clause of the
original will should constitute the whole of his will,
and we therefore conclude that the clear intent of said
twelfth clause when fully expressed is that the first
six clauses of the will are to be first met and then the
clauses of the codicils and then the seventh clause of
the original will shall take effect, etc. The payment
of the devises in the codicil necessarily reduced his
whole estate previously willed the amounts thereof,
and the language in the said twelfth clause is a clear
and explicit direction that the whole amounts are to
be paid in reduction of the residuary devise. It is also
insisted that the tenth clause of the second codicil
furnishes a sufficient reason by the use of the words
"an additional sum" to show that the devise in the
third clause thereof is not additional or it would have
been so expressed. Such words when connected with
other circumstances have been held sufficient for such
a conclusion, but standing alone we see no more reason
why it should be an argument against a cumulative
devise than in favor of it. To our minds it is only an
argument that the testator knew how to make himself

very definite, and that he realized some necessity for it in the tenth clause; but it does not clearly explain to our minds why he did not use explicit words of revocation as to the third clause of his original will if that was his intention. The devises in the second and third clauses of the second codicil are entirely different from the third of the original will as will be seen by comparison. Carrie Miller was his adopted daughter and John Russell Miller was her son and his namesake and had lived with the deceased and had been schooled and clothed by him. The presumption is in favor of the validity of the devise and more strongly so when the devisee has sustained intimate and affectionate relations with the testator during his life and we see nothing in the will and codicils to overcome this presumption. Waters v. Waters, 222 Ill. 26.

The decree of the Circuit Court will therefore be and is affirmed.

*Affirmed.*